DAVID MILLER *v.* ADMINISTRATOR, UNEMPLOYMENT
COMPENSATION ACT, ET AL.
(6870)

SPALLONE, STOUGHTON and NORCOTT, Js.

Argued December 7, 1988—decision released February 7, 1989

*Edward F. Kunin,* for the appellant (defendant Birdseye Development Company).

*Richard T. Sponzo,* assistant attorney general, and *Charles N. Overend,* assistant attorney general, for the appellee (named defendant).

STOUGHTON, J. This is an appeal by the defendant Birdseye Development Company (Birdseye) from the judgment of the trial court dismissing its appeal from the decision of the employment security board of review.

David Miller made a claim for unemployment compensation benefits after his employment by Standard Oil Company was terminated. The administrator found that the claim was valid and awarded benefits, charging the account of Birdseye, a previous employer. Birdseye appealed and an appeals referee conducted a hearing, made findings of fact, affirmed the decision of the administrator and dismissed the appeal. Birdseye then appealed to the Superior Court which rendered judgment dismissing the appeal.

On an appeal from a decision of the board of review, the trial court does not try the matter de novo but is bound by the finding of subordinate facts and reasonable factual conclusions made by the appeals referee where the board of review has adopted those findings and affirmed the decision of the referee. *Valley Surgical Group, P.C.* v. *Administrator,* 6 Conn. App. 588, 589–90, 506 A.2d 1075, cert. denied, 200 Conn. 802, 509 A.2d 516 (1986). "The trial court's function is to determine, on the record, whether the referee acted

unreasonably, arbitrarily or illegally. Conclusions of law reached by the referee must stand if they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." Id., 590.

The appeals referee found the following facts. Charges were assessed as a result of an award of benefits commencing March 11, 1984. The claimant was employed as a security guard by Birdseye from November, 1982, until he was removed by Birdseye from this employment effective June 4, 1983. He worked for Birdseye on a part-time basis and was simultaneously employed on a part-time basis as a security guard by Executive House Corporation. Birdseye and Executive House are distinct corporate entities, although the same individuals are involved in the management of each. Miller put in forty hours during each week of his joint employment, and his salary was charged to each company according to the services he provided to it. As of June 4, 1983,[1] the management of the companies decided to assign Miller exclusively to guard property and premises of Executive House, with no change in his duties or hourly rate. Miller became a full-time employee of Executive House as of June 5, 1983, and was removed from the payroll of Birdseye for that reason. No act of impropriety on the part of Miller was a factor in the employer's decision to assign him exclusively to the Executive House payroll; this decision was prompted entirely by the needs of the employer. Subsequent to the termination at issue but prior to the initiation of a claim for benefits, Miller worked elsewhere and earned covered wages in an amount exceeding ten times his weekly benefit rate. The appeals referee con-

[1] The referee's finding was that as of June 4, 1984, management decided to assign the claimant exclusively to guard property and premises belonging to the Executive House. It is obvious from the record that the actual date was June 4, 1983.

cluded that the circumstances surrounding the termination do not permit a denial of benefits and that an award of benefits subsequent to the termination requires imposition of merit rating charges.

Birdseye challenges the conclusion that the circumstances surrounding Miller's termination do not permit the denial of benefits on two grounds. Birdseye claims first that Miller was not eligible for benefits because when he left Birdseye he was not unemployed. Second, Birdseye claims that its account should not have been charged because Miller was "a person who leaves part-time work to accept full-time work" within the meaning of General Statutes § 31-236 (2) (B) (iv).[2]

[2] General Statutes (Rev. to 1983) § 31-236 provides in part: "DISQUALIFI-CATIONS. An individual shall be ineligible for benefits . . . (2) (A) if, in the opinion of the administrator, he has left suitable work voluntarily and without sufficient cause connected with his work, provided no individual shall be ineligible for benefits if he leaves suitable work for cause, including leaving as a result of changes in conditions created by his employer, or until such individual has earned at least ten times his benefit rate; or (B) if, in the opinion of the administrator, he has been discharged or suspended for felonious conduct, conduct constituting larceny in the third degree, repeated wilful misconduct in the course of his employment, or participation in an illegal strike as determined by state or federal laws or regulations, until such individual has earned at least ten times his benefit rate; provided (i) a person who, while on layoff from his regular work, accepts other employment and leaves such other employment when recalled by his former employer, or (ii) a person who leaves work which is outside his regular apprenticeable trade to return to work in his regular apprenticeable trade, or (iii) a person who has left work solely by reason of governmental regulation or statute, or (iv) a person who leaves part-time work to accept full-time work, shall not be ineligible on account of such leaving and the employer's account shall not at any time be charged with respect to such separation, unless such employer has elected payments in lieu of contributions; . . . (6) if it is found by the administrator that he has left employment to attend a school, college or university as a regularly enrolled student, such ineligibility to continue during such attendance . . . (9) if it is found by the administrator that he has retired and that such retirement was voluntary, until he has again become employed and has been paid wages in an amount required as a condition of eligibility as set forth in subdivision (3) of section 31-235; provided, if it is found by the administrator (A) that he has retired because (i) his work has become unsuitable considering his phys-

We agree with the trial court that Miller's eligibility for benefits from Birdseye after separation from a subsequent employer is not an issue, and that the only relevant issue is Birdseye's chargeability as a base year employer.

General Statutes (Rev. to 1983) § 31-225a (b) (2) provides in pertinent part: "With respect to each benefit year commencing on or after July 1, 1978, regular and additional benefits paid to an individual shall be allocated and charged to the accounts of the employers who paid him wages in his base period . . . ."

General Statutes (Rev. to 1983) § 31-230 provides in pertinent part: "An individual's benefit year shall commence with the beginning of the week with respect to which he has filed a valid initiating claim and shall continue through the Saturday of the fifty-first week following the week in which it commenced . . . . The base period of a benefit year shall be the first four of the five most recently completed calendar quarters prior to such benefit year . . . ."

Birdseye was clearly an employer during the base period and subject to charge for an award of benefits paid upon separation from a subsequent employer. A base period employer is relieved of charges upon separation from a subsequent employer and ensuing unemployment only if separation from the base period employer occurred under the conditions specified in General Statutes § 31-225a (c) (1) (E).[3] Miller's

___

ical condition and the degree of risk to his health and safety, and (ii) he has requested of his employer other work which is suitable and (iii) his employer did not offer him such work, or (B) that he has been involuntarily retired, he shall not be ineligible on account of such retirement . . . ."

[3] General Statutes (Rev. to 1983) § 31-225a (c) (1) (E) provides in pertinent part: "If the administrator finds that an individual's most recent separation from a base period employer occurred under conditions which would result in disqualification by reason of subdivision (2), (6) or (9) of section 31-236, no benefits paid thereafter to such individual with respect to any

termination by Birdseye did not occur under any of the conditions specified. Birdseye claims that because Miller was not unemployed when he was terminated by Birdseye, he was not eligible for benefits and Birdseye should not have been charged. That is not a valid claim for relief from chargeability.

The second claim made by Birdseye is also without merit. Birdseye asserts that it is protected from chargeability because Miller left part-time work to accept full-time work within the meaning of General Statutes § 31-236 (2) (B) (iv). The appeals referee found that the management of Birdseye and Executive House decided to assign Miller exclusively to guard property and premises of Executive House, that Miller then became a full-time employee of Executive House and was removed from the Birdseye payroll, and that the decision was prompted entirely by the needs of the employer. We agree with the trial court that on these facts the appeals referee and the board of review could reasonably conclude that Miller did not leave part-time work to accept full-time work. The construction placed upon § 31-236 (2) (B) (iv) by the agency responsible for administration of the unemployment compensation laws is entitled to deference from us. *Fellin* v. *Administrator,* 196 Conn. 440, 448, 493 A.2d 174 (1985).

We cannot say that the decision of the trial court was clearly erroneous. Its decision was logically correct and in accordance with the law.

There is no error.

In this opinion the other judges concurred.

---

week of unemployment which is based upon wages paid by such employer with respect to employment prior to such separation shall be charged to such employer's account, provided such employer shall have filed a notice with the administrator within the time allowed for appeal in section 31-241."